No. 95-2768

THOMAS J. JOHNSTON; THERESE          *
A. JOHNSTON, and all others          *
similarly situated,                  *
                                     *
          Appellants,                *
                                     *
     v.                              *
                                     *
COMERICA MORTGAGE CORPORATION,       *
                                     *
          Appellee.                  *


No. 95-2776

Appeals from the United States
District Court for the District
of Minnesota.

BETH WILLS, and all others           *
similarly situated,                  *
                                     *
          Appellant,                 *
                                     *
     v.                              *
                                     *
CENLAR FEDERAL SAVINGS BANK,         *
                                     *
          Appellee.                  *


Submitted: March 11, 1996

Filed: May 9, 1996

Before FAGG, BRIGHT, and WOLLMAN, Circuit Judges.

BRIGHT, Circuit Judge.

    Residential mortgagors, through counsel, brought class actions against Comerica Mortgage Corporation (Comerica) and Cenlar Federal

Savings Bank (Cenlar) for alleged improprieties in the maintenance of residential mortgage escrow accounts. After settlement, class counsel sought fees in the total sum of $157,500 ($57,500 in the Comerica action and $100,000 in the Cenlar suit) pursuant to "clear sailing" provisions in the settlement agreements. The district court determined that any fee award should be analyzed under the lodestar method, and concluded that class counsel had failed to establish an adequate basis to support an award.[1]

Two questions surface in this appeal: (1) whether the district court abused its discretion by applying the lodestar approach to the fee analysis; and (2) whether the district court abused its discretion by refusing to allow counsel to present time records after the court had declined to allow fees based on benefit to the class. We vacate the judgment of the district court disallowing any fee to class counsel, and remand for further proceedings and direct the allowance of reasonable attorney fees under the circumstances.

## I.   BACKGROUND

In the fall of 1991, appellants brought separate class actions alleging that Cenlar and Comerica each improperly maintained escrow accounts for taxes and insurance on residential mortgages that they serviced. The classes claimed that the defendants had failed to properly refund or credit surplus funds and were violating federal law and the terms of the mortgage agreements by their ongoing

---

[1]A magistrate judge initially recommended denial of the fee request in each case, and the district court approved the recommendation and filed an opinion.

servicing practices.[2]  The law firm Zimmerman Reed represented the class in both actions.

The cases were assigned to then Chief Judge Diana Murphy of the District of Minnesota.  Over the next three years the parties engaged in intensive settlement negotiations supervised to some extent by Magistrate Judge Jonathan Lebedoff.  In July of 1994, the parties came to an agreement on the settlement of each case and submitted the matters to Chief Judge Murphy for approval.  Subsequently, when Chief Judge Murphy became a judge on this court, the cases were reassigned to Judge David Doty.  On October 27, 1994, Judge Doty approved both settlements.

The terms of the settlement agreements provided members of the class cash "rebates" representing damages for lost interest on past retained overages totalling at least $123,000 in the Cenlar action[3] and $29,000 in the Comerica action.[4]  The settlements also provide

---

[2]Escrow accounts typically are maintained to enable the servicer to pay taxes, insurance, and other expenses as they come due.  When the loan servicer maintains excess cushion in an escrow account, the servicer essentially receives an interest-free loan from the customer on the excess amount.  Maintaining some cushion, however, enables the servicer to pay off expenses as they accrue without dipping into corporate funds if the customer is delinquent in paying.  The extent of the allowable cushion is governed by the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2609, and the mortgage contract itself.  See DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1173 (8th Cir. 1995).

[3]In the Cenlar action, Cenlar agreed to establish a "Settlement Fund" of $100,000, which would be prorated equally among eligible class members who had maintained escrowed mortgage loans as of January 1, 1994.  Cenlar agreed to pay each eligible class member a one-time payment of $0.68, as a "Paid-Off Loan Rebate," for escrowed mortgage loans which were not on its books and records on or after January 1, 1994.  Additionally, the class representatives received a one-time payment of $2,000.

[4]In the Comerica action, each class member who, as of June 1, 1994, had maintained an escrowed mortgage loan would receive a one-time $.60 payment.  As to loans which had been paid off, transferred or otherwise removed from Comerica's books and

injunctive relief changing defendants' future mortgage servicing practices. Although the value of the injunctive relief remained speculative, class counsel maintained that it constituted the real heart of the settlements.

In each case the settlement agreement provided that the defendant would establish a fund for attorney fees. The settlements also contained a "clear sailing" provision whereby the defendants agreed not to oppose the request for attorney fees. In the Comerica case the settlement agreement provided:

> If the settlement is finally approved, then Defendant will pay, as set forth below, fees and costs of Class counsel awarded or approved by the Court. Counsel for Plaintiffs and the Class will request compensation for their services. Defendant agrees to establish a fund for attorney fees, costs, and expenses not to exceed fifty seven thousand five hundred ($57,500) dollars (the "fund"). Defendant also agrees not to oppose, or cause to be opposed, a request for attorney fees, costs and expenses not exceeding fifty seven thousand five hundred ($57,500) dollars. Defendant shall not, under any circumstances, be liable for any fees, expenses, or costs in excess of the fund, nor shall counsel for the Plaintiffs and the Class be entitled to request any fees, costs or expenses in an amount in excess of the fund, or to invade or seek recovery from any payments being made to members of the Class.

(Appellants' App. at A-39). The Cenlar case specified the attorney fee issue on the same terms except that the fund for attorney fees, costs and expenses was capped at $100,000 rather than the $57,500.

The district court referred the matter of attorney fees to a new magistrate judge. For reasons of convenience, the court consolidated the review of the applications. In the proceedings

---

records,
a one-time loan rebate of no more than $.75, based on the number of years the loan had been previously serviced by Comerica, would apply. Additionally, the class representatives received a one-time payment of $2,000.

before the magistrate judge, class counsel sought to receive the full amount which each defendant had set aside for fees and expenses. Counsel based its request for fees solely upon a "percentage of the benefit" approach. The magistrate judge held a telephonic hearing on the fee request and during the course of that hearing, as his opinion notes,

> [T]he Court took pains to stress that the obligation of documenting a request for fees was not to be borne by the Court, that a number of factors generally have been thought to apply to the propriety of a fee request, and that the Court was not in a position to specify the documentation that would be appropriate for submission. . . . [T]he Court was assured by counsel for the Plaintiffs that "copious computerized" records had been maintained with respect to each of these cases, and that "hard numbers" would be forthcoming.

Johnston v. Comerica Mortgage Corp., Civil Nos. 4-91-675/4-92-202 (D. Minn. Dec. 14, 1994) (Report and Recommendation) at 5. Class counsel provided no further documentation.

After the deadline for submitting information had passed, the magistrate judge rendered his report recommending that the fee request be disallowed. The magistrate judge stated that class counsel failed to produce any information which would shed light upon the reasonableness of the fee applications[5] and determined

---

[5]The magistrate judge stated,

> Indeed, a most thorough review of the record before us fails to disclose the number of members in any certified class, the costs or expenses that would warrant taxation, the substantiality of any benefit that the class members would receive by the compromise of their claim, or the quantum of attorneys' time, skill or effort that was expended in processing these cases toward trial or in securing the settlement that was obtained.

Johnston v. Comerica Mortgage Corp., Civil Nos. 4-91-675/4-92-202 (D. Minn. Dec. 14, 1994) (Report and Recommendation) at 17 (footnote omitted).

that the total amount of benefit to the classes could not be accurately calculated and amounted to speculation. The magistrate judge considered this paucity of information particularly troubling given that the clear sailing agreement created a non-adversarial climate. Subsequently, the magistrate judge denied plaintiffs' motion for rehearing and reconsideration, noting that counsel submitted no further documentation in support of the motion.

Plaintiffs objected to the Report and Recommendation, asserting that the classes had received substantial benefit and that their claim for fees should rest on benefit to the class. In an extensive opinion, the district court disallowed the request for attorney fees. Plaintiffs then asked the court to reconsider its ruling and requested permission to submit time records in support of the fee request. The district court denied the motion for reconsideration and also denied counsel leave to submit time records, stating, "Counsel simply failed to meet its burden under circumstances where the law was clear. This failure does not warrant a submission at this late date." Johnston v. Comerica Mortgage Corp., Civil Nos. 4-91-675/4-92-202 (D. Minn. June 16, 1995) at 3. This appeal followed.

## II. DISCUSSION

### A. Basis for Awarding Fee

Courts utilize two main approaches to analyzing a request for attorney fees. Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. See Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1266 (D.C. Cir. 1993); H.J. Inc. v. Flygt Corp., 925 F.2d 257, 259-60 (8th Cir. 1991); In re Workers' Compensation Ins. Antitrust Litig., 771 F. Supp. 284, 286 (D. Minn. 1991). Another

method, the "percentage of the benefit" approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation.[6]  See In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1294 n.2 (9th Cir. 1994); Walitalo v. Iacocca, 968 F.2d 741, 747-48 (8th Cir. 1992); In re Workers' Compensation Ins. Antitrust Litig., 771 F. Supp. at 286.

The lodestar and percentage of the benefit methods were extensively discussed in a Third Circuit Task Force Report dated October 8, 1985.  See Court Awarded Attorney Fees, Report of the Third Circuit Task Force (Arthur R. Miller, Reporter), 108 F.D.R. 237.[7]  The Task Force noted that the lodestar and the percentage of the benefit methods have distinct attributes which make them suitable for particular types of cases.  Id. at 250-51. The Task Force recommended the lodestar approach for statutory fee-shifting cases because it is reasonably objective, neutral, and does not require making monetary assessments of intangible rights.  Id. at 255; see also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 821 (3d Cir.) ("Because the lodestar award is decoupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class."), cert. denied, 116 S. Ct. 88 (1995).  However, the Task Force recommended that the percentage of

---

[6]This approach is also referred to as the "percentage of the recovery" or the "percentage of the fund" method.

[7]The Task Force consisted of a distinguished panel of judges and attorneys within and outside the Third Circuit.

the benefit method be employed in common fund situations.[8]  Id.; see also In re General Motors, 55 F.3d at 821.[9]

In approving the magistrate judge's recommendation not to award fees in this case, the district court stated that counsel could not recover under the "percentage of the benefit" approach because the attorney fees were not recovered from common funds and because the value of the settlements was too speculative to allow proper calculation.  The district court determined that the lodestar, or time plus hourly charge, should be applied to these cases.  The district court further stated that counsel had

_____

[8]The Task Force discussed some of the deficiencies of the lodestar process particularly as it applies to a fund case. First, calculation of the lodestar increases the workload of an already over-taxed judicial system.  Second, the elements of the lodestar process are insufficiently objective and produce results that are far from homogenous.  Third, the lodestar process creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law.  Fourth, the lodestar is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount.  Fifth, although designed to curb certain abuses, the lodestar approach has led to others.  Sixth, the lodestar creates a disincentive for the early settlement of cases.  The report in this area added ". . . there appears to be a conscious, or perhaps, unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar."  Seventh, the lodestar does not provide the district court with enough flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered.  Eighth, the lodestar process works to the particular disadvantage of the public interest bar.  Ninth, despite the apparent simplicity of the lodestar formulation, considerable confusion and lack of predictability remain in its administration.  Court Awarded Attorney Fees, 108 F.R.D. at 246-49.

[9]In In re General Motors, Judge Becker presents a detailed and scholarly analysis of class action settlements and attorney fee awards in which he notes the inadequacies of both the lodestar and the percentage of the recovery mechanisms.  See In Re General Motors, 55 F.3d at 801-03.

failed to develop a sufficient factual basis to support the recovery under the lodestar method and denied any fee award.  Finally, the

district court denied counsel's motion for reconsideration and for leave to submit time records in support of the fee request.

The district court concluded that because the attorney fees were to be paid by the defendants separate and apart from the settlement funds, the fees did not come from a "common fund" belonging to the plaintiffs, and thus the percentage of the benefit approach was inappropriate.[10]  We disagree.  Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source.  The award to the class and the agreement on attorney fees represent a package deal.  Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.  See In re General Motors, 55 F.3d at 821 ("The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually come from the same source.")

Accordingly, the direct payment of attorney fees by defendants should not be a barrier to the use of the percentage of the benefit analysis in the cases.  The district court, however, also concluded that the value of the settlements remained too speculative to calculate an appropriate percentage of the benefit.[11]  Although

---

[10]The district court relied on Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518 (1st Cir. 1991) as illustrative of its reasoning.  In Weinberger, plaintiffs appealed the district court's denial of attorney fees in connection with a class action suit which was voluntarily discontinued.  Id. at 521.  Weinberger is inapposite to the "common fund" discussion in this case where the settlement did provide a tangible and substantial benefit to the members of the class.

[11]The court exhibited some concern that the separate negotiation of attorney fees presents the opportunity for the attorneys to trade relief benefiting the class for a higher fee for themselves.  See Weinberger, 925 F.2d at 524-25; Court Awarded Attorney Fees, 108 F.R.D. at 266.  The district court appropriately noted that the potential for abuse is heightened by the defendants' agreement not to contest fees up to a certain point.  See Weinberger, 925 F.2d at 525.  Under such

class counsel contends that the total benefits to the classes are surely in excess of one million dollars and may extend to fifteen million dollars, the defendants dispute those figures.

It is within the discretion of the district court to choose which method to apply.  See Court Awarded Attorney Fees, 108 F.R.D. at 258; In re General Motors, 55 F.3d at 821 (court may select lodestar method in non-statutory fee cases where it can be determined more easily than the suitable percentage); Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560, 566 (7th Cir. 1994) (decision whether to use percentage method or lodestar method remains in discretion of district court); In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d at 1296 (no presumption in favor of either percentage or lodestar method encumbers district court's discretion to choose one or the other); In re Workers' Compensation Ins. Antitrust Litig., 771 F. Supp. at 286.  But see Swedish Hosp. Corp., 1 F.3d at 1271 (requiring use of percentage method in common fund cases).  Given the relatively small cash rebate and the dispute as to the value of the injunctive relief, the district court's decision to apply the lodestar approach was not an abuse of discretion.

The district court properly noted that it bears the responsibility of scrutinizing attorney fee requests, see In re General Motors, 55 F.3d at 820; Court Awarded Attorney Fees, 108 F.R.D. at 251, and that the burden rests with counsel to establish a factual basis to support the award.  See, H.J. Inc. v. Flygt Corp., 925 F.2d at 260 (citing Hensley v. Eckerhart, 641 U.S. 424, 437 (1983)).  In its fee application materials, class counsel

---

circumstances, the district court believed that it could better scrutinize the fairness of the fee award by using the lodestar approach.

failed to disclose its hourly rates or its time records, making calculation of a lodestar impossible. Accordingly, the district court disallowed a fee award.

As we have observed, once the district court issued its final determination that any award would be analyzed only under the lodestar approach, class counsel moved the court for reconsideration and for leave to submit its time records. The district court denied the motions.

Although the district court need not tolerate stonewalling by class counsel, special circumstances exist here such that the district court's denial of fees in its entirety must be set aside. First, counsel successfully obtained cash rebates and injunctive relief on behalf of the classes and should be rewarded for its efforts. Second, we think it significant to note that the magistrate judge did not demand that counsel provide an hourly basis for a fee award and did not state that the lodestar approach would be the sole basis for its award. Moreover, in the precedents in similar cases in the District of Minnesota, a percentage of the benefit approach has been applied. Of particular note is the similar case <u>Meserow v. Sears Mortgage Corp.</u>, Civil No. 4-91-477 (D. Minn. Oct. 5, 1994). The order in that case recited:

> The Court has reviewed the Petition for Attorneys' Fees and Expenses submitted by Zimmerman Reed and has determined that the amounts petitioned for are reasonable, and therefore, directs that counsel for the class shall receive, as and for compensation for their legal services and as reimbursement for reasonable out-of-pocket costs and expenses Three Hundred Thirty Thousand Dollars ($330,000) (to be paid by Defendant). Said sum shall be paid in accordance with the terms of the Settlement Agreement.

(Appellants' App. at A-159). In addition, the appellants have referred to several other cases in the District of Minnesota in which class counsel participated and were awarded substantial fees

-12-

based on the settlement arrangements and not on a lodestar approach.[12]

Additionally, it is worthy of note that, in an opinion in a similar case issued subsequent to the district court's determination here, this court approved an award of $240,000 in attorney fees as provided for under a settlement agreement. DeBoer v. Mellon Mortgage Co., 64 F.3d 1171 (8th Cir. 1995). We stated,

> The award of attorneys' fees likewise does not constitute an abuse of discretion. The vast majority of the fee will be paid by Mellon and will not come out of any class recovery. The continuing nature of a permanent refunding procedure constitutes a benefit to the class adequate to justify the fee award.

Id. at 1178. Class counsel in this case also represented the class in the DeBoer action.

Given the successful recovery of the classes and class counsel's prior experience with attorney fee awards in similar situations within the District of Minnesota, counsel's belief that it could rely on the terms of the settlement agreements and the percentage of the benefit approach was understandable. Although the district court could properly decide to proceed with the lodestar approach, the court abused its discretion in failing to allow counsel to submit time records once that decision was final.

**III. CONCLUSION**

Accordingly, we reverse and vacate the order denying attorney fees in these cases and remand to the district court for further

---

[12]See, e.g., Jacobson v. Midland Mortgage Co., Civil No. 4-91-443 (D. Minn. June 9, 1994) (App. at A-160); and Danforth v. First Union Mortgage Corp., Civil No. 4-91-457 (D. Minn. May 16, 1994) (App. at A-177).

proceedings consistent with this opinion.  The district court is free to utilize either the lodestar or the percentage of the benefit method.  In the former event, class counsel should be afforded the opportunity to justify its fee request with submission of verified time records.  No costs are awarded on this appeal.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.