IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| JAMES J. BURKE, | ) | 2 CA-CV 2002-0035 |
| | ) | DEPARTMENT B |
| Plaintiff/Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| ARIZONA STATE RETIREMENT | ) | |
| SYSTEM, an agency of the State of | ) | |
| Arizona; the STATE OF ARIZONA; and | ) | |
| the ARIZONA BOARD OF REGENTS, an | ) | |
| agency of the State of Arizona, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY
AND ON MOTION FOR RECONSIDERATION

Cause No. C-316479

Honorable Michael Alfred, Judge

VACATED AND REMANDED WITH DIRECTIONS

Leonard Felker Altfeld Greenberg & Battaile, P.C.
  By John F. Battaile III, Anne-Marie Brady, and
  Clifford B. Altfeld                                  Tucson
                                 Attorneys for Plaintiff/Appellee

Terry Goddard, Arizona Attorney General
  By Daniel P. Schaack, Catherine M. Stewart,
  Paul E. Carter, and Fred W. Stork                     Phoenix
                           Attorneys for Defendants/Appellants

E S P I N O S A, Chief Judge.

¶1        The Arizona State Retirement System, the Arizona Board of Regents, and the State of Arizona (collectively, "ASRS") previously appealed from a post-settlement award of attorney fees to counsel representing state employee James Burke and a class of similarly situated state employees. ASRS argued the fee award was unreasonably high because the trial court erroneously applied the "common fund doctrine" rather than the hourly "lodestar" method of calculating fees. In an opinion filed April 29, 2003, we agreed with ASRS because we found the common fund doctrine inapplicable to the parties' settlement agreement and further determined that application of the common fund doctrine is precluded when a fee award is authorized under A.R.S. § 12-341.01. Burke v. Ariz. State Ret. Sys., 205 Ariz. 116, 67 P.3d 712 (App. 2003).

¶2        Class counsel moved for reconsideration, arguing, inter alia, that our analysis was flawed because the operative contract was solely the parties' settlement agreement rather than the class's underlying employment contracts. After considering class counsel's motion and the response filed by ASRS, we find class counsel's point well taken and conclude it obviates our statutory discussion in the opinion. However, because we conclude, as before, that the common fund method of awarding attorney fees remains fundamentally inapplicable on the facts of this case, the outcome remains the same. Accordingly, we grant the motion to the extent that we withdraw the earlier opinion and substitute this one in its stead. For the reasons set forth below, we vacate the fee award and remand the matter to the trial court for further proceedings consistent with this decision.

Facts and Procedural Background

¶3        Burke filed a complaint against ASRS on behalf of himself and similarly situated state employees in 1996, seeking judicial review of ASRS's administrative decision that their

2

retirement compensation rights were not adversely affected when ASRS transferred the employees from a defined contribution plan to a defined benefit plan. The complaint alleged causes of action for breach of contract, impairment of contract, promissory estoppel, breach of fiduciary duty, violation of 42 U.S.C. § 1983, and related theories. In addition to monetary damages, Burke requested "reasonable attorneys' fees" without specifying a basis for that request. The trial court certified the class as those state employees whom ASRS had transferred from the defined contribution program to the defined benefit program. See Ariz. R. Civ. P. 23, 16 A.R.S., Pt. 1. Shortly thereafter, the court ruled in Burke's favor on his administrative review claim and entered a judgment ordering ASRS to recalculate his retirement benefits and containing language pursuant to Rule 54(b), Ariz. R. Civ. P., 16 A.R.S., Pt. 2. The court awarded Burke his attorney fees and costs, presumably under A.R.S. § 12-341.01, which authorizes a discretionary fee award to the prevailing party in an action arising out of a contract.[1] ASRS appealed.

¶4 Meanwhile, the class had moved for partial summary judgment on the ground the court's ruling on Burke's administrative claim constituted the law of the case on the class's impairment-of-contract cause of action, arguing the same analysis also applied to the class. ASRS opposed the motion and filed a cross-motion for summary judgment, arguing that most of the class members had waived their claims by accepting modified pension benefits or had failed to exhaust their administrative remedies and that the claims of unretired class members were not ripe. While the motions were pending, the parties agreed to several stays while conducting settlement

---

[1]Section 12-341.01, A.R.S., applies to actions against the state. New Pueblo Constructors, Inc. v. State, 144 Ariz. 95, 696 P.2d 185 (1985).

negotiations.[2] Eventually, the parties entered into a settlement agreement that provided ASRS would pay each class member the greater amount of benefits to which he or she would be entitled under either the defined contribution program or the defined benefit program. ASRS also agreed to pay "reasonable attorneys' fees for representation of the Class" but reserved the right to challenge class counsel's fee application.[3]

¶5        Class counsel subsequently submitted a fee application requesting $9,549,824.37 or twenty percent of the aggregated increased retirement benefits created by the settlement,[4] arguing that fees paid by a settling defendant are properly included as part of the common fund of increased retirement benefits for the class members created by the settlement and are properly calculated as a percentage of that fund. ASRS objected on the grounds that this was not a common fund, fee-sharing case but a fee-shifting case and that fees should be calculated using an hourly lodestar method. The trial court found that fees were "payable pursuant to the negotiated agreement of the parties embodied in the Stipulation of Settlement, which require[d] a discretionary decision by th[e] Court" and that there was no statutory basis for the award. Pursuant to its findings, the court granted the application and awarded fees of $7,416,893.60, or

---

[2]ASRS's appeal of the judgment entered on Burke's administrative review claim was also stayed.

[3]The legislature enacted A.R.S. § 38-771.01, entitled, "Alternative benefits for transferred defined contribution program members," which codified the settlement agreement and authorized payment of benefits to the class members. 1999 Ariz. Sess. Laws, ch. 266, § 3. The legislature also appropriated $600,000 "to pay reasonable attorney fees and costs incurred by the plaintiffs in the class action suit." 1999 Ariz. Sess. Laws, ch. 266, § 7.

[4]According to class counsel, adding the value of the "fees, costs and administration" recovered by the class to the increased retirement benefits reduces the percentage to 16.67.

4

16.61 percent of the amount of total increased retirement benefits. ASRS moved for a new trial, reasserting its contention that this is a fee-shifting, lodestar situation and arguing that it had not agreed to assume the class's obligation to its counsel, that the amount of the fee award was not reasonable, and that the record contained no factual basis to support the award. The court ruled that its use of the common fund method was proper, but nonetheless reduced the fee award to about $3.7 million. This appeal followed.

Standard of Review

¶6 In granting class counsel's fee application, the trial court concluded that fees were not awardable under any fee-shifting statutes and that the common fund doctrine was the appropriate basis for awarding fees in this case. ASRS argues that the court erred in both respects. Whether a fee statute applies is a question of law. See Motel 6 Operating Ltd. P'ship v. City of Flagstaff, 195 Ariz. 569, 991 P.2d 272 (App. 1999); Phoenix Newspapers, Inc. v. Dep't of Corr., 188 Ariz. 237, 934 P.2d 801 (App. 1997). Similarly, although attorney fee awards are generally subject to an abuse of discretion standard of review, see ABC Supply, Inc. v. Edwards, 191 Ariz. 48, 952 P.2d 286 (App. 1996), whether the common fund doctrine applies is also a question of law. In re Miniscribe Corp., 309 F.3d 1234 (10th Cir. 2002); Brytus v. Spang & Co., 203 F.3d 238 (3d Cir. 2000); Edwards v. Alaska Pulp Corp., 920 P.2d 751 (Alaska 1996). Furthermore, as class counsel points out in its answering brief, interpretation of a settlement agreement is likewise a question of law. State ex rel. Goddard v. R.J. Reynolds Tobacco Co., ___ Ariz. ___, 75 P.3d 1075 (App. 2003); Citibank (Ariz.) v. Bhandhusavee, 188 Ariz. 434, 937 P.2d 356 (App. 1996). Accordingly, and contrary to class counsel's assertion in its motion for reconsideration, this award is subject to our de novo review.

5

Discussion

¶7  It is well established that a court in Arizona may award attorney fees only when expressly authorized by contract or statute. DVM Co. v. Stag Tobacconist, Ltd., 137 Ariz. 466, 671 P.2d 907 (1983); Sellinger v. Freeway Mobile Home Sales, Inc., 110 Ariz. 573, 521 P.2d 1119 (1974). The common fund doctrine is an equitable exception "to the general rule that, in the absence of statute or contract, each side in a litigated case must bear its own attorneys' fees," allowing a court to award attorney fees "to counsel for the prevailing side whose efforts in litigation create or preserve a common fund from which others who have undertaken no risk or cost will nevertheless benefit." Kerr v. Killian, 197 Ariz. 213, ¶19, 3 P.3d 1133, ¶19 (App. 2000); see LaBombard v. Samaritan Health Sys., 195 Ariz. 543, 991 P.2d 246 (App. 1998). The common fund doctrine serves the twofold purpose of compensating counsel for producing benefits for a class and preventing the unjust enrichment of the class members who receive them. Kerr; LaBombard. Under this doctrine, a fee award may be calculated as a percentage of the fund created or by using the hourly lodestar method.[5] See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291 (9th Cir. 1994); Florida v. Dunne, 915 F.2d 542 (9th Cir. 1990).

¶8  In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975), the Supreme Court held that the common fund doctrine may be appropriately applied when (1) the class is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be apportioned with some exactitude among those receiving

---

  [5]Using this method, the court "first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295 n.2 (9th Cir. 1994). If appropriate, the court may then enhance the lodestar with a "multiplier" to arrive at a reasonable fee. Id.

the benefits. See also Boeing Co. v. Van Gemert, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980). The parties generally agree the present case meets the first two prongs of the test. First, as reflected in the settlement agreement, the class members were specifically identified and notified. Second, the benefits to the class members were accurately traced on their individual account statements. The parties disagree only on the third prong, whether application of the common fund doctrine actually apportions the fee obligation among the class beneficiaries. ASRS argues that shifting the class's fees to it, the losing party, does not apportion them among the class members and is incompatible with the common fund doctrine. We agree.

¶9 The common fund doctrine is based on an equitable principle of allocating attorney fees among the benefited group, not shifting them to the opposing party. See Steer v. Eggleston, 202 Ariz. 523, 47 P.3d 1161 (App. 2002); see also Municipality of Anchorage v. Gallion, 944 P.2d 436 (Alaska 1997); Mountain W. Farm Bureau Mut. Ins. Co. v. Hall, 38 P.3d 825 (Mont. 2001). "The common fund doctrine differs from exceptions to the American rule in that the doctrine is a mechanism for fee-spreading, not fee-shifting; the common fund doctrine requires reimbursement of fees 'by the prevailing party, not the losing party.'" Edwards, 920 P.2d at 755, quoting Bowles v. Wash. Dep't of Ret. Sys., 847 P.2d 440, 449 (Wash. 1993); see also Van Gemert (common fund doctrine differs from other theories authorizing attorney fee awards in that award is borne by prevailing parties, not losing party); Camden I Condo. Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991) ("[A] key element of the common fund case is that fees are not assessed against the unsuccessful litigant (fee shifting), but rather, are taken from the fund or damage recovery (fee spreading)."); Brown v. Phillips Petroleum Co., 838 F.2d 451 (10th Cir.

1988) (unlike statutory fees that shift burden to losing party, common fund fees are shared by all who benefited from litigation); Kuhn v. State, 924 P.2d 1053 (Colo. 1996) (same).

¶10        Moreover, "[u]nder regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then apply to the court for a fee award from the fund." Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir. 2003). The court is in control of the fund and determines the amount of attorney fees counsel may recover "from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class." Florin v. Nationsbank of Ga., 34 F.3d 560, 563 (7th Cir. 1994). Accordingly, the trial court's finding that the parties' settlement agreement required ASRS to separately pay the class's attorney fees pursuant to the common fund doctrine appears fundamentally inconsistent with both the concept and application of the doctrine.

¶11        In its decision to apply the common fund doctrine, the trial court relied on two cases class counsel cited, Johnston v. Comerica Mortgage Corp., 83 F.3d 241 (8th Cir. 1996), and In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir. 1995).[6] In both decisions, the courts stated that attorney fees could be calculated under the percentage-of-fund method when the defendants, through settlement agreements, had agreed to pay the classes' attorney fees. For several reasons, we find those cases inapplicable and unpersuasive.

---

[6]Class counsel also relied on an unpublished order of the First Circuit, citing it as legal authority in their answering brief. Rule 28(c), Ariz. R. Civ. App. P., 17B A.R.S., prohibits the citation of memorandum decisions and applies to unpublished decisions of any court. Walden Books Co. v. Dep't of Revenue, 198 Ariz. 584, 12 P.3d 809 (App. 2000). First Circuit Rule 32.3(a)(4) defines an "unpublished opinion of this court" as "an opinion . . . that has not been published in the West Federal Reporter series."

¶12        First, they are distinguishable from the present situation. Johnston involved two settlement agreements described by the court as "package deal[s]," which provided lump sum recoveries for each plaintiff class involved, injunctive relief, and "clear sailing" provisions whereby the defendant agreed not to oppose fee requests that did not exceed specified maximums. 83 F.3d at 246, 243. Here, the agreement specifically states, "The amount of the attorneys' fees, expenses and costs are not part of the Stipulation." As ASRS pointed out during oral argument in this court, and as class counsel acknowledge, the settlement agreement merely reflected the parties' agreement to disagree about the proper method for awarding attorney fees.

¶13        Similarly, in General Motors, the defendant was not challenging the methodology for determining the fee award. In fact, General Motors agreed to the fees requested by class counsel and approved by the trial court, and defended the award on appeal. In agreeing with objecting class members that the common fund doctrine was preferable to the lodestar method under the facts of the case, although not necessarily required, the Third Circuit noted: "In this case, the fee clearly was not made pursuant to a statute; therefore no legislatively endorsed policy favors assuring counsel an adequate fee." 55 F.3d at 822. But that is not the situation here. At the hearing on ASRS's motion for reconsideration, ASRS and its witnesses made it clear that its agreement to pay reasonable fees had been premised solely on its potential liability for the class's fees under § 12-341.01 in the underlying class action.

¶14        More importantly, we disagree with the reasoning in Johnston and General Motors to the extent these cases support class counsel's argument that "a defendant's agreement to pay attorneys' fees is part of the class benefit recovered"; thus, "the fees here do come from the fund and are borne by those who benefit, i.e., the Class Members." We reject that theory as

9

superficially plausible but effectively rewriting the common fund doctrine. That doctrine is founded on

> the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit.

Alyeska Pipeline, 421 U.S. at 257, 95 S. Ct. at 1621, 44 L. Ed. 2d at 153. Thus, the "common fund" for purposes of the doctrine is generally the monetary damages owed to and recovered on behalf of the class. See Kerr, 197 Ariz. 213, ¶24, 3 P.3d 1133, ¶24 (common fund constitutes determinate judgment fund that "'itself is a quantifiable sum that has been created by the litigation undertaken by the representative plaintiffs'"), quoting Bailey v. State, 500 S.E.2d 54, 72-73 (N.C. 1998); see also Van Gemert; Bowles. Attorney fees are not necessarily a part of this fund except by way of an application and court order, or the parties' express agreement, to compensate counsel by a percentage of the recovered amount. See Staton (after attorneys obtain a settlement for the class, they may petition court for compensation from the fund); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund doctrine "permits recovery of fees from the damage award obtained"); Brown, 838 F.2d at 454 ("Fees in common fund cases are extracted from the predetermined damage recovery."). And, although the class's attorney fees could have been included in the settlement agreement as a percentage of the recovered fund, see, e.g., Johnston; Camden I Condominium Ass'n, that was not done here. Thus, the parties' agreement to separately place the burden of "reasonable attorneys' fees" on ASRS cannot intuitively or logically be viewed as part of the common fund recovered in this case.

10

¶15        We find equally unpersuasive class counsel's argument that the trial court could, in its discretion, nonetheless find that the parties intended that the common fund doctrine apply. After a hearing on ASRS's motion for reconsideration, the trial court expressly found that ASRS had previously acknowledged that fees may be authorized under the common fund doctrine and chided the agency for taking a contrary position. But the record does not support that finding or the court's related comments. The court appears to have based its determination solely on a letter from ASRS counsel, written during settlement negotiations, that included a statement that fees "may be authorized under A.R.S. § 12-341.01 or 12-348 or the common fund doctrine or the substantial benefit doctrine." Read in context, however, it is clear that counsel's statement was not a concession that fees either would be or should be awarded under the common fund doctrine but was merely a listing of all possibilities. Indeed, counsel so testified at the hearing. Furthermore, the court's additional determination that ASRS, "in agreeing to pay an unspecified . . . award of attorneys' fees assumed the obligation of the Class under the 'common fund' method," was a legal conclusion that was not only contrary to the evidence but was also, as explained herein, incorrect as a matter of law.

¶16        Finally, as noted earlier, the common fund doctrine is based on the equitable principle that those who receive the benefits of a plaintiff's litigation should not be unjustly enriched and should thus share in compensating plaintiff's counsel for the benefits produced. Steer; Kerr. That objective is not served under the trial court's approach here. The record reveals no issue of unjust enrichment of the class having ever been raised or discussed, and no amount was included in the class recovery fund to provide or offset a percentage-of-the-fund fee award for class counsel. See, e.g., Staton, 327 F.3d at 969 ("[T]he defendant's determination of the amount

11

it will pay into a common fund will necessarily be informed by the magnitude of its potential liability for fees under the fee shifting statute, as those fees will have to be paid after successful litigation and could be treated at that point as part of a common fund against which the attorneys' fees are measured.") (emphasis added). Absent any such provision, as Division One noted in Kerr, "the shifting of fees to a losing governmental entity . . . has nothing to do with spreading fees among all the prevailing taxpayers who benefit from a lawyer's effort." 197 Ariz. 213, ¶22, 3 P.3d 1133, ¶22.

## Conclusion

¶17 Although some hallmarks of the common fund doctrine are present here, the primary element—the spreading of attorney fees among the benefited class—is glaringly absent. Notwithstanding class counsel's semantic argument, the settlement agreement and record here establish a fee-shifting, rather than a fee-sharing, scenario. In such a setting, lodestar analysis is the proper method for determining the fee award. See Camden I Condo. Ass'n; Kerr. Although Kerr, upon which class counsel relies, uses the term "fee shifting" in discussing both types of scenarios, that case only supports our analysis because the court there correctly applied the common fund doctrine to award attorney fees as an offset from the class members' individual recoveries, not as a separate and additional amount to be paid by the state, as in this case. Thus, contrary to class counsel's assertion, the trial court did not "match the facts to the [common fund] paradigm," and it erred in applying that doctrine to determine an appropriate award of attorney fees here.

¶18 ASRS further argues that, because the class litigation arose from the class's employment contracts, fees were properly awardable pursuant to § 12-341.01(A), an assertion

class counsel refutes. But we need not address that issue or class counsel's additional arguments in light of our conclusions above. We therefore vacate the trial court's attorney fee award and remand the matter for it to determine a reasonable award by applying appropriate fee-shifting guidelines as set forth in Schweiger v. China Doll Restaurant, Inc., 138 Ariz. 183, 673 P.2d 927 (App. 1983).

¶19        In making its determination, the trial court should ascertain a reasonable billing rate for class counsel's time and the hours reasonably expended on the case. See id.; see also ABC Supply. "[E]vidence of reasonableness is required even in contingency fee cases, [and] '"[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."'" Sanborn v. Brooker & Wake Prop. Mgmt., Inc., 178 Ariz. 425, 430, 874 P.2d 982, 987 (App. 1994) (citation omitted), quoting Timmons v. City of Tucson, 171 Ariz. 350, 357, 830 P.2d 871, 878 (App. 1991), quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40, 50 (1982).

¶20        Vacated and remanded for further proceedings consistent with this opinion.

_____
PHILIP G. ESPINOSA, Chief Judge

CONCURRING:


_____
JOHN PELANDER, Presiding Judge


_____
WILLIAM E. DRUKE, Judge (Retired)

13