NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

SAMANTHA WASSENAAR, *Petitioner/Appellee,*

*v.*

RYAN WASSENAAR, *Respondent/Appellant.*

No. 1 CA-CV 20-0429 FC
FILED 7-27-2021

Appeal from the Superior Court in Maricopa County
No. FC2015-053180
The Honorable Alison S. Bachus, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Petitioner/Appellee*

Garnice Law PLLC, Scottsdale
By Victor A. Garnice
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

**¶1**         Ryan Wassenaar (Father) appeals from a post-decree order denying his petitions regarding parenting time, child support and to enforce or modify the Decree. For the reasons stated below, that portion of the June 2020 order requiring the parties to help prepare and execute a new deed naming Samantha Anderson Wassenaar (Mother) the sole owner of a home, is vacated. In all other respects, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**         Father and Mother married in 2007 and have one minor child who was born in 2009. After Mother petitioned for dissolution in 2015, the parties entered into a consent decree later entered by the court. Mother's counsel drafted the Decree, which disposed of the parties' community property, including the former marital home in Anthem. The Decree provided that Mother:

> shall retain the marital home . . . as her sole and separate property. Mother shall be solely responsible for any and all mortgage and liabilities associated with the marital home and shall indemnify and hold Father harmless therefrom. Mother shall make reasonable attempts to refinance the marital home to remove Father's name from the loan documents within one year of the entry of the Decree. Upon the sale of the marital home by Mother, whenever that shall occur, Father shall be entitled to 30% of the equity in the home after all mortgages, closing costs and fees are paid.

Father waived the opportunity to have counsel of his choice review the Decree before he signed it. At about this same time, Father relocated for a

landscape design job in California. Neither party appealed from the Decree, which was entered in December 2015.

¶3            In 2019, Father returned to Arizona and became self-employed. Father began making informal requests for more parenting time with their child, most of which Mother granted. After a few months, Father petitioned for increased parenting time and a modification of child support. Father also petitioned to enforce or modify the Decree to immediately convey his community property share of the equity in the former marital home awarded to Mother.

¶4            Both Father and Mother testified at an evidentiary hearing on Father's petitions held in June 2020. In a ruling issued later that month, the court found Father's return to Arizona was a material change in circumstances and awarded him more parenting time. Father testified that he earns just under $3,000 per month after business expenses. The court, though, attributed to him income of $9,000 per month and ordered him to pay $543 per month in child support. On the issue of the marital home, the court denied Father's petition to enforce or modify the Decree. The court awarded Mother her attorneys' fees under A.R.S. § 25-324, after finding Father's position about the home to be unreasonable. This court has jurisdiction over Father's timely appeal pursuant to Arizona Revised Statutes (A.R.S.) section 12-2101(A)(2) (2021).[1] *Accord Yee v. Yee*, 251 Ariz. 71, 73 ¶ 1 (App. 2021).

## DISCUSSION

I.      **Father Has Shown No Abuse of Discretion by the Court Denying His Request for Floating Parenting Time.**

¶5            The Decree awarded joint legal custody with Father receiving 35 days of long-distance parenting time. Mother did not dispute that Father's post-Decree return to Arizona in 2019 was a material change in circumstances that might justify a modification of the parenting time schedule. Thus, the court's role was to determine what parenting time schedule was in the child's best interests. *See* A.R.S. § 25-403(B).

¶6            Father proposed a parenting time schedule of every other weekend and four "floating days" per month. Mother did not object to Father having parenting time every other weekend, but did oppose any floating days. She testified that an inconsistent schedule caused conflict and

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

harmed the child. Based on the evidence presented, the court found that "floating days" conflicted with the child's best interests. Accordingly, the court denied Father's request for floating days and instead awarded him 127 scheduled days, a decision Father challenges on appeal.

¶7        Father asserts the court modified parenting time based on findings unsupported by the evidence. Specifically, he argues there was no evidence that floating days harmed the child. In doing so, Father misstates the record. In addressing the past, present and potential future relationship between the parents and the Child, the court expressed concerns about father's behavior:

> The Court is concerned that Father's pattern of requesting time with the Child on short notice has signaled to the Child that Father spends time with the Child at Father's convenience, or that the Child is expected to be "on call." This pattern could have long-term negative effects on the Father/Child relationship, particularly as the Child enters her teenage years, unless parenting time is exercised with consistency and on a predictable schedule.

Having considered this, and the other A.R.S. § 25-403(A) factors, the court then found that a changing schedule associated with floating days conflicted with the child's best interests.

¶8        This court will not disturb a parenting time decision absent an abuse of discretion. *In re Marriage of Diezsi*, 201 Ariz. 524, 525 ¶ 3 (App. 2002). The superior court weighs the conflicting evidence before exercising its discretion to determine what schedule is in a child's best interests. *Nold v. Nold*, 232 Ariz. 270, 273-74 ¶ 14 (App. 2013) (applying A.R.S. § 25-403(A)). Father has shown no abuse of discretion.

¶9        Mother testified about the effect of an inconsistent schedule on the child and the court considered the conflicting evidence before modifying the schedule. Parenting plans are designed to protect a child's emotional and physical health, which are not trumped by a parent's convenience or desires. *See* A.R.S. §§ 25-403.02(C)(3) (requiring a "practical schedule"), - 403.02(D). The court made findings on all the A.R.S. § 25-403(A) best interest factors and Father has shown no error.

**II.    Father Has Shown No Error in the Court's Attributing to Him $9,000 in Monthly Income.**

¶10        Father argues it was error for the court to calculate his child support obligation based on $9,000 in monthly income, which was his California salary. Father asserts that his self-employed net income is less than $3,000 per month, meaning the court's calculation of child support is legal error.

¶11        The superior court must consider the financial resources of each parent when determining child support. A.R.S. § 25-320(D). Arizona permits the attribution of a higher income based on a parent's work experience and earning capacity. *See, e.g.*, *Taliaferro v. Taliaferro*, 188 Ariz. 333, 337 (App. 1996); *Williams v. Williams*, 166 Ariz. 260, 266 (App. 1990). Findings of fact are reviewed for an abuse of discretion, while legal questions under the child support Guidelines are reviewed de novo. *McNutt v. McNutt*, 203 Ariz. 28, 30 ¶ 6 (App. 2002); A.R.S. § 25-320 app. (2018) (Guidelines). The evidence is construed in the light most favorable to affirming. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51 ¶ 11 (App. 2009).

¶12        Self-employment income is calculated based on "gross receipts minus ordinary and necessary" business expenses. *See* Guidelines § 5(C). The court squarely addressed Father's contention that he earned less than $3,000 per month from self-employment, finding that Father had not:

> corroborated that testimony. Father provided no profit/loss statement or clear accounting of his earnings at his current position. Father runs his personal and business expenses through the same financial accounts. In short, the Court does not conclude that the documentary evidence supports Father's claim of such low earnings. Even if Father had proven lower earnings, Father has not demonstrated that he is incapable of earning more than he is. He provided no evidence regarding a job search for any employment, much less a position that pays $9,000.00 per month. Based on the evidence presented, the Court finds Father is capable of earning $9,000.00 per month**.**

The Guidelines allow the attribution of income up to full earning capacity when a parent is under-employed. Guidelines § 5(E). Father did not prove

that he is incapable of earning the amount attributed to him (like what he earned in California).

¶13 The superior court considered the conflicting evidence on Father's self-employment income and earnings capacity, as well as credibility, and this court does not reweigh that evidence on appeal. *See Clark v. Kreamer*, 243 Ariz. 272, 276 ¶ 14 (App. 2017). Because the order shows the court engaged in the necessary inquiry, and Father has shown no error based on his employment status/potential as of the date of the hearing, the attribution of income to Father is affirmed.

### III. Father Has Shown No Error in Denying His Petition to Enforce or Modify the Decree.

¶14 Father asserts the Decree unfairly dealt with the distribution of the equity in their community property marital home and asked the court to intercede. Father, however, did not timely appeal from the entry of the Decree. And the court denied Father's petition to enforce or modify the Decree. He does not challenge the awarded amount, per se, but he challenges the indefinite nature of that payout. Father has shown no error.

¶15 To promote the amicable settlement of disputes in a dissolution proceeding, the parties may enter into a valid, binding agreement to dispose of property. *See* Ariz. R. Fam. Law P. (ARFLP) 69. Settlement agreements are contracts. *Emmons v. Superior Court*, 192 Ariz. 509, 512 ¶ 14 (App. 1998). Although this court reviews de novo whether a settlement agreement is enforceable, *Burke v. Ariz. State Ret. Sys.*, 206 Ariz. 269, 272 ¶ 6 (App. 2003), the disposition of property under such an agreement reflected in in a decree that has become final generally is not subject to modification, *De Gryse v. De Gryse*, 135 Ariz. 335, 338 (1983); A.R.S. § 25–327(A).

¶16 The court's entry of the Decree in 2015 is a tacit finding that the settlement was enforceable. Neither party appealed from the Decree. Thus, the only issue is whether the court erred in denying Father's petition to enforce or modify the Decree. The Decree reads, in relevant part: "Upon the sale of the marital home by Mother, *whenever that shall occur*, Father shall be entitled to 30% of the equity in the home after all mortgages, closing costs and fees are paid." [Emphasis added.] "A general principle of contract law is that where parties bind themselves by a lawful contract and the terms of the contract are clear and unambiguous, a court must give effect to the contract as written." *Estes Co. v. Aztec Constr., Inc.*, 139 Ariz. 166, 168 (App. 1983).

**¶17** The Decree's language is plain, and Father admits he understood the terms when he signed it. Moreover, the court found that it:

> received no credible evidence that Father was under any duress, coercion or undue influence when he entered into the agreement. Father could have insisted upon a different timeframe for sale of the home or disposition of the home's equity (or his share of the valued equity upon date of dissolution), but he did not.

**¶18** To the extent that Father wished to challenge the terms of the Decree entered in 2015, he should have timely appealed years ago. By failing to do so, Father waived any arguments on the rule against perpetuities or the fairness of the Decree that he now seeks to press. *See Porter v. Estate of Pigg*, 175 Ariz. 194, 197 (App. 1993) (holding that any legal error in a decree did not affect its validity "but only made it subject to correction by a timely appeal"). Moreover, the term Father objects to addresses Mother's sale of the marital home, a right vested in Mother at the time of the entry of the Decree. Because Mother was a "life in being at the creation of the interest," the Decree does not violate the rule against perpetuities. *See* Thomas F. Bergin & Paul G. Haskell, *Preface to Estates in Land and Future Interests* 178 & n.1 (2d ed. 1984) (citing Gray, *The Rule Against Perpetuities* § 201 (4th ed 1942)).

**¶19** Likewise, the home was not property that was omitted from the Decree. *See* A.R.S. § 25-318(D); *State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, 120 ¶ 12 (App. 2003) (language in a contract is ambiguous only if it can reasonably be construed to have more than one meaning). The Decree unambiguously specified the property address. Finally, Father did not meet the requirements for a timely post-judgment modification under one of the six conditions listed in ARFLP 85(b). For these reasons, he has shown no error in the superior court declining to grant his petition to enforce or modify the Decree.

## IV. The Superior Court Erred in Requiring the Parties to Prepare and Execute a New Deed Placing the Home in Mother's Name Alone.

**¶20** Father did not ask that his name be removed from the deed to the home, and Mother filed no petition or motion seeking affirmative relief. The superior court, however, ordered the parties "to prepare and execute a corrective deed to reflect the sole and separate character of the" home, placing it solely in Mother's name. Father challenges this ruling, arguing

the court, "without creating even so much as a recordable lien interest" in his favor, "modified the Decree to reduce Ryan's equitable interest in the real property from 30% of the net equity to zero and effectively eliminated that share equity."

**¶21** The Decree required Mother to "make reasonable attempts to refinance the marital home to remove Father's name from the loan documents within one year of the entry of the Decree." Mother admittedly failed to do so. Accordingly, in June 2020, the court ordered Mother to refinance the home "to ensure Father's name is removed from any and all loan documents for the property" by mid-October 2020. Although enforcing the terms of the Decree in this respect, the court denied Father's petition to enforce or modify the Decree "insofar as Father requests any other relief." Stated differently, the court's order enforced the Decree but refused to modify it.

**¶22** The Decree, entered in 2015, did not require the parties to prepare and execute a new deed for the home. Mother testified that Father's name had been removed from the home in 2013 through a warranty deed, "when the parties initially contemplated dissolution of their marriage," testimony the court found "credible and corroborated by documentary evidence." Although that understanding may have been incorrect, any such misunderstanding did not alter the terms of the Decree, which did not require the parties to prepare and execute a new deed for the home.

**¶23** Although not directly addressing this issue on appeal, Mother asserts Father could not properly seek relief from the Decree under ARFLP 85(b). Even if Mother had filed an ARFLP 85(b) motion (she did not), that same argument would apply with equal force to her. Because the Decree did not require the parties to sign a new deed for the home removing Father's name and placing it solely in Mother's name, and because the court's order did not modify the Decree, that portion of the court's order requiring a new deed is vacated.[2]

---

[2] Although Father argues the superior court erred in awarding Mother attorney's fees under A.R.S. § 25-324, as explained in this court's March 3, 2021 order, this court lacks jurisdiction to review that award.

## IV.    Attorneys' Fees on Appeal

¶24        Both parties request attorneys' fees on appeal pursuant to A.R.S. § 25-324, which focuses on the financial resources of the parties and the reasonableness of their legal positions. The record shows that the parties are in a similar financial position. Mother took reasonable legal positions. Father, although he continues to assert the waived home payout argument on appeal, also took reasonable positions on parenting time and the attribution of income. Thus, in the exercise of the court's discretion, neither party is awarded fees on appeal. Mother is awarded her taxable costs on appeal contingent upon her compliance with ARCAP 21.

### CONCLUSION

¶25        That portion of the June 2020 order requiring the parties to help prepare and execute a new deed naming Mother the sole owner of a home is vacated. In all other respects, the order is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA