658 S.E.2d 320

Nancy S. LAYMAN, David M. Fitzgerald, Vicki K. Zelenko, Wyman M. Looney, Nancy Ahrens, James Haynes, and Janice Franklin, on behalf of themselves and all others similarly situated, Respondents/Appellants

v.

The STATE of South Carolina and The South Carolina Retirement System, Appellants/Respondents.

No. 26427.

Supreme Court of South Carolina.

Heard Sept. 19, 2007.

Decided Jan. 28, 2008.

Rehearing Denied March 10, 2008.

Opinion Modifying Attorneys' Fees March 10, 2008.

436

438

440

---

David K. Avant and Kelly H. Rainsford, both of The South Carolina Retirement System, of Columbia, and Robert E. Stepp, Roland M. Franklin, Jr., Amy L.B. Hill, and Tina Cundari, all of Sowell Gray Stepp & Lafitte, of Columbia, for Appellants/Respondents.

A. Camden Lewis, Keith M. Babcock, and Ariail E. King, all of Lewis & Babcock, of Columbia, and Richard A. Harpootlian, of Columbia, for Respondents/Appellants.

Michael R. Hitchcock, David A. Good, and Mikell C. Harper, all of Columbia, for Amici Curiae the Honorable Glenn F. McConnell and the Honorable Robert W. Harrell, Jr.

Chief Justice TOAL:

This is an appeal of an award of $8.66 million in attorneys' fees. The circuit judge, acting pursuant to a prior order of this Court, awarded fees under a statute authorizing attorneys' fees and both parties appealed. We affirm the circuit judge's decision to award attorneys' fees, but reduce the amount awarded due to several errors of law in the circuit judge's decision.

## FACTUAL/PROCEDURAL BACKGROUND

The facts leading up to this controversy are fully recounted in this Court's opinion in the case *Layman v. The State of South Carolina and The South Carolina Retirement System,* 368 S.C. 631, 630 S.E.2d 265 (2006) [hereinafter *Layman*]. In *Layman,* five plaintiffs filed an action in the circuit court against the State of South Carolina ("State") and the South Carolina Retirement System ("Retirement System") in response to the enactment of the State Retirement System Preservation and Investment Reform Act[1] ("Act 153"). Act 153 amended the Teachers and Employee Retention Incentive (TERI) program and the Working Retiree program by requiring TERI participants and Working Retirees to make pay-period contributions of their salaries into the Retirement System when the statutes codifying these programs did not previously require them to do so.[2]

This Court granted the plaintiffs' petition for original jurisdiction and certified a class consisting of Working Retirees and TERI participants who entered into these programs prior to Act 153's effective date. In the order granting original jurisdiction, the Court set forth a timeline on which the case was to proceed and further ordered the Retirement System to deposit all contributions made by members of the class into an

1. Act No. 153, 2005 S.C. Acts 1697.

2. The TERI program is codified at S.C.Code Ann. § 9–1–2210 *et. seq.* (Supp. 2006). The Working Retiree program is codified at S.C.Code Ann. § 9–1–1790 (Supp.2006).

interest-bearing escrow account until the Court entered a final decision in the matter. The parties briefed and argued the case in this Court, and the Court ultimately held that Act 153 breached a legislatively-created contract as to the class of TERI participants, but not necessarily as to the class of Working Retirees. The Court ordered the return of contributions made by all TERI participants between the effective date of Act 153 and the date of the Court's opinion, with interest, and held that the TERI participants were no longer required to contribute money to the Retirement System.[3]

Following the Court's opinion in *Layman,* counsel for the TERI plaintiffs requested that the Court award attorneys' fees under one of two alternative theories: (1) an award of attorneys' fees under the common fund doctrine, or (2) an award of costs to include attorneys' fees pursuant to S.C.Code Ann. § 15–77–300 (2005) ("the state action statute"). This Court denied counsel's motion for attorneys' fees under the common fund doctrine and remanded the request for costs to a circuit judge to determine whether counsel were entitled to attorneys' fees under the state action statute. The Court further instructed the circuit judge to determine the amount of any such fees "based on the actual amount of work performed, expenses incurred, and the benefit obtained for all of the old TERI participants." *Layman v. State,* S.C. Sup.Ct. Order dated June 1, 2006 (368 S.C. at 648, 630 S.E.2d at 274). The Court's order also decertified the class of TERI plaintiffs.

On remand, the circuit judge determined that counsel were entitled to attorneys' fees under the state action statute, and that the language of the statute, read in conjunction with this Court's directive in the remand order, did not limit an award of attorneys' fees to an amount based on the hourly fee of plaintiffs' counsel. Rather, the judge determined that counsel were entitled to attorneys' fees based on a "percentage of the

---

3. As to the Working Retirees' claims, the Court determined that the terms of the Working Retiree statute did not create a contract between the State and the Working Retirees. For this reason, the Court remanded the Working Retirees' claims for a case-by-case factual determination as to whether the State had entered into individual written contracts with the Working Retirees which may have been breached by enforcement of Act 153. *Layman,* 368 S.C. at 643, 630 S.E.2d at 271–72. Therefore, attorneys' fees on behalf of Working Retirees are not at issue here.

benefits obtained in conjunction with the amount of work performed in obtaining such results." Accordingly, the circuit judge awarded counsel all "expenses incurred" in litigating the underlying case, as well as 21% of the "immediate benefit" recovered for all TERI participants, and 1% of the projected "future benefit" provided by counsel to all TERI participants.[4] These figures resulted in an award of $8,665,297.50 in attorneys' fees to be paid by the State and the Retirement System pursuant to the state action statute.

The State and the Retirement System filed a notice of appeal, and counsel for TERI plaintiffs filed a cross-appeal. We certified the appeals to this Court pursuant to Rule 204(b), SCACR.

The parties' dispute in this case essentially involves two issues. First, the State and the Retirement System argue that the circuit judge erred in finding that counsel were entitled to attorneys' fees under the state action statute, which requires a finding that the State and the Retirement System acted without "substantial justification" in defending their claim. S.C.Code Ann. § 15–77–300. As a second issue, all parties question the circuit judge's method of determining a reasonable fee. The State and the Retirement System argue that the circuit judge should not have determined an award of attorneys' fees based on a percentage of the TERI participants' recovery, and that using this method of calculation resulted in an unreasonably high award of attorneys' fees. In the cross-appeal, counsel for the TERI plaintiffs argue that the circuit judge correctly calculated the attorneys' fees as a percentage of the TERI participants' recovery, but that the percentage used resulted in an unreasonably low fee award.

---

**4.** The "expenses incurred" totaled $4,724.10. This figure represents an accounting of counsel for the TERI plaintiffs' actual expenses in litigating *Layman*. The circuit judge defined the "immediate benefit" as the contributions to the Retirement System that this Court ordered be immediately returned to the old TERI participants following the opinion in *Layman*. These contributions totaled $37,812,255.60. The circuit judge defined the "future benefit" as the income stream that would have been created by contributions of the old TERI participants had Act 153 continued to be enforced, discounted to present day value. This amount totaled approximately $72 million.

444

The decision to award or deny attorney's fees under the state action statute will not be disturbed on appeal absent an abuse of discretion by the trial court in considering the applicable factors set forth by the statute. *McMillan v. S.C. Dept. of Agric.*, 364 S.C. 60, 76, 611 S.E.2d 323, 331 (Ct.App. 2005). An abuse of discretion occurs when the conclusions of the trial court are either controlled by an error of law or are based on unsupported factual conclusions. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 601, 553 S.E.2d 110, 121 (2001). Similarly, the specific amount of attorneys' fees awarded pursuant to a statute authorizing reasonable attorneys' fees is left to the discretion of the trial judge and will not be disturbed absent an abuse of discretion. *See Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997). In this case, however, the issue of the amount of attorneys' fees awarded hinges on the Court's interpretation of "reasonable" attorneys' fees as contained in the state action statute. The interpretation of a statute is a question of law, which this Court reviews de novo. *Catawba Indian Tribe v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007).

## LAW/ANALYSIS

### I. "Substantial justification" under the state action statute.

The State and the Retirement System argue that the circuit judge erred in finding that counsel were entitled to an award of attorneys' fees under the state action statute. We disagree.

The state action statute provides in relevant part:

In any civil action brought by the State, any political subdivision of the State or any party who is contesting state action, unless the prevailing party is the State or any political subdivision of the State, the court may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:

(1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and

(2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.

S.C.Code Ann. § 15–77–300. In the instant case, the State and the Retirement System argue that the circuit judge abused his discretion in finding that they acted without substantial justification in pressing their claim and that the circuit judge therefore erred in awarding attorneys' fees under the state action statute.

Substantial justification for purposes of the state action statute means "justified to a degree that could satisfy a reasonable person." *Heath v. County of Aiken,* 302 S.C. 178, 183, 394 S.E.2d 709, 712 (1990) (quoting *Pierce v. Underwood,* 487 U.S. 552, 564, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). Therefore, in deciding whether a state agency acted with substantial justification, the relevant question is whether the agency's position in litigating the case had a reasonable basis in law and in fact. *McDowell v. S.C. Dept. of Soc. Servs.,* 304 S.C. 539, 542, 405 S.E.2d 830, 832 (1991). Although an agency's loss on the merits does not create a presumption that its position was not substantially justified, *Video Gaming Consultants, Inc. v. S.C. Dept. of Revenue,* 358 S.C. 647, 650, 595 S.E.2d 890, 892 (Ct.App.2004), the substance and outcome of the matter litigated is nevertheless relevant to the determination of whether there was substantial justification in pressing a claim. *Heath,* 302 S.C. at 183, 394 S.E.2d at 712.

The State and the Retirement System initially argue that the state action statute does not apply because the TERI plaintiffs brought this suit against the State of South Carolina, with the state agency (the Retirement System) included merely as a "stakeholder." The State and the Retirement System contend that under this procedural framework, the actions of the Retirement System are irrelevant. From this premise, the State and the Retirement System argue that the State's actions (through the General Assembly) in adopting Act 153 may not be scrutinized under a statute that references agency action, and furthermore, that an award of attorneys' fees based on a finding that the General Assembly acted without substantial justification in taking a particular legislative action violates separation of powers principles. Accordingly, the State and the Retirement System argue that the terms of the state action statute prevent either of them from being liable for attorneys' fees. We disagree.

446

■ We first find the characterization of the Retirement System as merely a stakeholder in this litigation to be wholly inaccurate. While it is true that early in the litigation, counsel for TERI plaintiffs stated to the trial court that the only reason for including the Retirement System as a party to the suit was because the agency was a "stakeholder" with respect to the employee contributions at issue, and that their clients' substantive claims were with the State alone, the central focus of the litigation has been the actions of both the State and the Retirement System, with the Court referring to these entities jointly as "the State." *See Layman,* 368 S.C. 631, 630 S.E.2d 265. The Retirement System is a named party in the caption of this case, and moreover, the Court specified that both entities would be liable when it directed the circuit judge to determine the issue of whether attorneys' fees were to be "taxed as court costs against the State of South Carolina and the South Carolina Retirement System" under the state action statute. *Layman v. State,* S.C. Sup.Ct. Order dated June 1, 2006 (368 S.C. at 648, 630 S.E.2d at 274).

■ In our view, separating the liability of the State and the Retirement System is simply an attempt by these parties to bar any potential for a fee award, and this Court refuses to compartmentalize the actions of the State and the Retirement System in this manner. Instead, we believe the overriding principle of the state action statute is that as a state agency, the Retirement System is obligated to carry out the instructions of the State. Furthermore, as a governing body, the State is ultimately responsible for the actions of its agencies. That the statute plainly recognizes this principle is exhibited by the language purporting to apply to cases in which a party is "contesting state action." S.C.Code Ann. § 15–77–300. For this reason, we find the attempt to parse the actions of the State and the Retirement System unpersuasive, and therefore hold that either the State or the Retirement System may be liable for attorneys' fees under the statute.

■ Turning to the State's and the Retirement System's separation of powers argument, we find that although a judicial holding that the legislature "failed" in some legislative capacity might give rise to separation of powers concerns, this is not what we held in *Layman.* Instead, this Court held that

the collective actions of the State and the Retirement System breached a contract with certain TERI participants. In light of this holding, the relevant question in a substantial justification inquiry in this case does not lie with the wisdom behind the State's enactment of Act 153 in and of itself, nor does it lie with the authority of the Retirement System to enforce the statute. Rather, the substantial justification inquiry in this case is based solely on the State's and the Retirement System's maintenance of litigation in which they defended a breach of their contract with the TERI participants. Accordingly, separation of powers concerns are not implicated by an assessment of liability for attorneys' fees in this case.

The State and the Retirement System next argue that the state action statute does not allow an award of attorneys' fees because they were substantially justified in pressing their claim. We disagree.

The State and the Retirement System contend that their actions in *Layman* were substantially justified under *Video Gaming Consultants, Inc. v. S.C. Dept. of Revenue,* 358 S.C. 647, 595 S.E.2d 890 (Ct.App.2004). In that case, a video gaming business sought attorneys' fees under the state action statute after this Court ruled in the underlying litigation that a state statute prohibiting the advertising of video poker machines was an unconstitutional restriction on commercial speech. *See id.* at 649, 595 S.E.2d at 891. The court of appeals found no evidence that the Department of Revenue acted without substantial justification in pressing its claim against the gaming business, reasoning that "[a]s an administrative agency, the Department 'must follow the law as written until its constitutionality is judicially determined.'" *Id.* at 652, 595 S.E.2d at 892 (quoting *Beaufort County Bd. of Educ. v. Lighthouse Charter Sch. Comm.,* 335 S.C. 230, 241, 516 S.E.2d 655, 660–61 (1999)). The court of appeals determined that the Department of Revenue was substantially justified in maintaining its action against the gaming business because the Department was "merely enforcing [the statute] as it was obligated to do until a proper court determined the statute to be unconstitutional." *Id.* Therefore, the court of appeals held that the video gaming business could not recover attorneys' fees under the statute.

We find the instant case distinguishable from *Video Gaming*. Although the separation of powers principles articulated by the court of appeals in *Video Gaming* were correctly applied in light of the issue of the video poker statute's constitutionality in that case, these same principles are not equally applicable to a finding of substantial justification in this case, in which this Court declined to address the constitutionality of Act 153, but instead decided *Layman* solely on whether Act 153 constituted a breach of contract.[5] In other words, the State and the Retirement System in *Layman* were not defending the validity of an unconstitutional statute, but rather, were defending the validity of a statute that constituted a breach of contract. Accordingly, although separation of powers principles may substantially justify a state agency's defense of an unconstitutional statute, these same principles will not substantially justify the State's and the Retirement System's defense of what we held to be an illegal act.

Instead, we find *Heath v. County of Aiken* to be instructive in this matter. 302 S.C. 178, 394 S.E.2d 709 (1990). In *Heath*, this Court determined in the underlying litigation that the local county council violated a state statute prohibiting county governing bodies from developing personnel polices and procedures for employees under the direction of an elected official. *Id.* at 181, 394 S.E.2d at 710. In reviewing whether county council was substantially justified in pressing its claim, this Court examined the "substance and outcome of the matter eventually litigated," and found that the statute construed in the underlying case was "unambiguous." *Id.* at 184, 394 S.E.2d at 712. The Court reasoned that when coupled with the relevant precedent, this clearly established that the County's claims did not have a reasonable basis in law or in fact. Accordingly, the Court held that an award of attorneys' fees was appropriate under the state action statute. *Id.*

▆▆▆ Turning to the instant case, this Court held in *Layman* that the language in the TERI statute created an unambiguous contract between the State and TERI participants who entered the program prior to the enactment of Act 153,

---

5. In fact, Act 153 as it applies to TERI participants joining the program after the Act's effective date is still the law in South Carolina.

and that the State's unilateral alteration of this agreement by applying the requirements of Act 153 to this class of TERI participants constituted a breach of contract. 368 S.C. at 640, 630 S.E.2d at 270. In our view, the State's and the Retirement System's breach of an unambiguous contract with the TERI participants is analogous to the County's violation of an unambiguous statute in *Heath.* In other words, we find that the State and the Retirement System had no reasonable basis in law or in fact on which to defend the breach of an unambiguous contract with certain TERI participants. Accordingly, we hold that the State and the Retirement System were not substantially justified in pressing their claim, and therefore, the circuit judge correctly concluded that counsel for TERI plaintiffs were entitled to attorneys' fees under the state action statute. *See also McDowell,* 304 S.C. at 543, 405 S.E.2d at 833 (finding that in relying on an erroneous legal conclusion, "DSS's litigation position was not substantially justified because it had no reasonable basis in law and fact").

Although we hold that the State and the Retirement System were not substantially justified in pressing their claim in *Layman,* at the same time, we agree with the State's and the Retirement System's assertion that the circuit judge erred in his findings regarding substantial justification. Specifically, the circuit judge ruled that the State's failure to investigate the legality of Act 153 before its enactment and the subsequent passing of Act 153 into law had no reasonable basis in law or in fact. We find that the circuit judge's reasoning is flawed in several respects.

In deciding whether a state agency acted with substantial justification, courts must only determine whether the agency's position in litigating the case has a reasonable basis in law and in fact. *Id.* at 542, 405 S.E.2d at 832. For this reason, the factual circumstances surrounding the enactment of Act 153 are irrelevant in deciding whether substantial justification existed for the State's and the Retirement System's defense of Act 153's contractual validity in the underlying litigation. The circuit judge's finding that the State's enactment of Act 153 lacked substantial justification was not only completely unrelated to the relevant inquiry in this case, it also unnecessarily implicated separation of powers principles which recognize that the authority to carry out the legislative process rests

exclusively with the legislature. Although a court may issue the final judgment with regard to the constitutionality or enforceability of a law currently in effect, there is no similar judicial authority for reviewing the basis for the legislature's enactment of a law in the first instance. *See Keyserling v. Beasley*, 322 S.C. 83, 86, 470 S.E.2d 100, 101 (1996) ("We do not sit as a super legislature to second guess the wisdom or folly of decisions of the General Assembly."). For these reasons, the actions of the General Assembly in passing Act 153 into law was an incorrect basis on which to find a lack of substantial justification.

■ The circuit judge's finding that the Retirement System should have challenged the enactment and enforcement of Act 153 is flawed for similar reasons. On this matter, the circuit judge grossly misstated the separation of powers doctrine as it operates in our system of government by reasoning that "our system of government is a triangle of checks and balances and does not require one branch to unwaveringly yield to the directive of another while it waits for the third branch to referee in the form of judicial determination." To the contrary, our courts have clearly established that under separation of powers principles, executive agencies are obligated to comply with the General Assembly's enactment of a law until it has been otherwise declared invalid. *See, e.g., Video Gaming*, 358 S.C. at 652, 595 S.E.2d at 892. To imply that the Retirement System would have been substantially justified under the state action statute had it refused to enforce Act 153 infringes on the legislative authority and burdens executive agencies with the duty of making their own assessment of legislation while already harboring the responsibility of administering legislation. Under our system of government, state agencies are not saddled with such burdens, and therefore, this was an incorrect basis on which to find a lack of substantial justification.

■ Finally, the circuit judge reasoned that the continued enforcement of Act 153 had no reasonable basis in law or in fact once the *Layman* circuit court issued a temporary restraining order prohibiting the Retirement System from collecting further contributions from the named plaintiffs. We find that because the State and the Retirement System fully

complied with the terms of the temporary restraining order (i.e., they stopped collecting further contributions from only the named plaintiffs), this was also an improper basis on which to make a finding of substantial justification.

For these reasons, we vacate the circuit judge's findings on the issue of substantial justification. The circuit judge's findings misinterpret the existing law and unnecessarily extend the inquiry beyond the issue of whether the State and the Retirement System were substantially justified in pressing their claim against the TERI plaintiffs. Clarifying the relevant inquiry in this matter, we hold that the State and the Retirement System were not substantially justified in breaching an unambiguous contract with certain TERI participants. Accordingly, we hold that the circuit judge did not err in his ultimate conclusion that counsel for the TERI plaintiffs are entitled to attorneys' fees under the state action statute.

## II. Amount of attorneys' fees awarded

The remaining issue between the parties centers on the circuit judge's method of determining a "reasonable" fee to be awarded under the state action statute. The State and the Retirement System argue that the circuit judge erred in basing an award of attorneys' fees on a percentage of the TERI participants' recovery because it resulted in an unreasonably high fee award. In turn, counsel for the TERI plaintiffs argue that the circuit judge correctly based the fee on a percentage of the TERI participants' recovery, but chose a percentage that resulted in an unreasonably low award of attorneys' fees. We agree with the State and the Retirement System that a calculation of attorneys' fees under the state action statute based on a percentage of the TERI participants' recovery is improper. We further agree that under the circumstances of this case, an award of attorneys' fees totaling $8.66 million is unreasonable.

### A. Method of calculation

Under the "American Rule," the parties to a lawsuit generally bear the responsibility of paying their own attorneys' fees. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). This Court and others recognize numer-

ous exceptions to this rule, including the award of attorneys' fees pursuant to a statute. *See Jackson*, 326 S.C. at 307, 486 S.E.2d at 759. A statutory award of attorneys' fees is typically authorized under what is known as a fee-shifting statute, which permits a prevailing party to recover attorneys' fees from the losing party. *See Blum v. Stenson*, 465 U.S. 886, 893, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Neither party disputes that the state action statute applicable here is such a fee-shifting statute. *See* S.C.Code Ann. § 15-77-300 (providing that a court "may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency").

■■■ Another exception to the American Rule recognized by this Court is the award of attorneys' fees pursuant to the common fund doctrine. The common fund doctrine allows a court in its equitable jurisdiction to award reasonable attorneys' fees to a party who, at his own expense, successfully maintains a suit for the creation, recovery, preservation, or increase of a common fund or common property. *Petition of Crum. Johnson v. Williams*, 196 S.C. 528, 531, 14 S.E.2d 21, 23 (1941). Attorneys' fees awarded pursuant to the common fund doctrine come directly out of the common fund created or preserved. *Id.* The justification for awarding attorneys' fees in this manner is based on the principle that "one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses." *Id.* at 531–32, 14 S.E.2d at 23.

■■■ A key distinction between the award of fees authorized by statute and the award of fees from a common fund is that the equitable principles underlying the common fund doctrine create a mechanism in which attorneys' fees are not assessed against the losing party by *fee-shifting*, but rather, are taken directly from the common fund or recovery and borne by the prevailing party through *fee-spreading*. *See Burke v. Ariz. State Ret. Syst.*, 206 Ariz. 269, 77 P.3d 444, 448 (Ct.App.2003) (emphasis in original). To reflect this distinction, courts generally hold that a "lodestar" approach reflecting the amount of attorney time reasonably expended on the litigation results in a reasonable fee under a fee-shifting statute. *See Blum*, 465 U.S. at 900 n. 16, 104 S.Ct. 1541

(comparing the bases for awarding a reasonable attorneys' fee under the common fund doctrine versus a federal fee-shifting statute). Conversely, when awarding fees to be paid from a common fund, courts often use the common fund itself as a measure of the litigation's "success." These courts consequently base an award of attorneys' fees on a percentage of the common fund created, known as the "percentage-of-the-recovery" approach. *See, e.g., Edmonds v. United States,* 658 F.Supp. 1126, 1144 (D.S.C.1987) (expressing a preference for a percentage-of-the-recovery method when awarding attorneys' fees from a common fund).[6] The circuit judge in the instant case utilized the percentage-of-the-recovery approach in awarding counsel for TERI plaintiffs $8.66 million in attorneys' fees under the state action statute.

Counsel for TERI plaintiffs argue that this Court's instructions to consider the "benefit to all old TERI participants" in awarding attorneys' fees make the determination of a reasonable award in this case analogous to cases in which attorneys' fees are awarded from a common fund. Therefore, even though the state action statute shifts the source of attorneys' fees to the State, counsel nevertheless urges this Court to find that the circuit judge properly awarded attorneys' fees based on the percentage-of-the-recovery approach typically utilized when the source of attorneys' fees is spread among the beneficiaries of a common fund. We disagree.

In our view, utilizing common fund methodology when awarding attorneys' fees pursuant to a fee-shifting statute is wholly inappropriate in light of the underlying theoretical distinction between a common fund source of attorneys' fees and a statutory source of attorneys' fees. Although both sources are exceptions to the general rule that each party is responsible for the party's own attorneys' fees, the common fund doctrine is based on the equitable allocation of attorneys' fees among a benefited group, and not the shifting of the attorneys' fee burden to the losing party. This Court certain-

---

6. Meanwhile, a number of state courts have recently ruled that lower courts have discretion in deciding whether to calculate awards from a common fund using a percentage-of-the-recovery approach or the lodestar method. *See City of Birmingham v. Horn,* 810 So.2d 667 (Ala. 2001); *Chun v. Bd. of Trs. of the Employees' Ret. Syst. of the State of Haw.,* 92 Hawai'i 432, 992 P.2d 127 (2000).

ly acknowledges that a percentage-of-the-recovery approach may be appropriate under circumstances in which a court is given jurisdiction over a common fund from which it must allocate attorneys' fees among a benefited group of litigants. However, where, as here, a fee-shifting statute shifts the source of reasonable attorneys' fees entirely to the losing party, we find it both illogical and erroneous to calculate fees using the methodology justified under a fee-spreading theory. *See Burke*, 206 Ariz. 269, 77 P.3d 444 (vacating a trial court's award of $9.6 million in attorneys' fees based on a percentage of the recovery because a settlement agreement in which the state retirement system agreed to pay reasonable attorneys' fees established a fee-shifting as opposed to a fee-spreading scenario).

Furthermore, we note that an award based on a percentage of the TERI plaintiffs' recovery is inconsistent with the express terms of the statutory scheme. Although the state action statute neither requires that attorneys' fees be awarded based on an hourly rate, nor places a numerical cap on attorneys' fees, we find it significant that the statute provides that attorneys' fees assessed to the state agency may only be paid "upon presentation of an itemized accounting of the attorney's fees." S.C.Code Ann. § 15–77–330 (2005). In our opinion, the requirement of an "itemized accounting" squarely contradicts the utilization of the percentage-of-the-recovery method in awarding attorneys' fees under the statute.

We additionally distinguish the instant case from *Ex parte Condon*, 354 S.C. 634, 583 S.E.2d 430 (2003), in which this Court approved a circuit court's award of attorneys' fees based on a percentage of the recovery in a class action case against the State and the South Carolina Department of Revenue on behalf of citizens 85 and older who failed to receive the one percent sales tax exemption provided for by law. In *Condon*, the parties reached a settlement agreement which stipulated that the circuit court would calculate and award attorneys' fees to be paid by the State to the prevailing plaintiff class. Although the agreement established a fee-shifting scenario in this regard, the guidelines for determining attorneys' fees set forth in the parties' agreement clearly contemplated an award based on a percentage of the common fund recovered. *Id.* at 636–37, 583 S.E.2d at 431. In contrast, the state action

statute authorizing attorneys' fees in this case in no way suggests that attorneys' fees should be calculated based on a percentage of the common fund recovered. Moreover, the Court in this case specifically rejected counsel for TERI plaintiffs' petition for an award of fees under the common fund doctrine, specifying that "attorney's fees in this matter should not come from the retirement contributions made by the old TERI participants." *Layman v. State*, S.C. Sup.Ct. Order dated June 1, 2006 (368 S.C. at 648, 630 S.E.2d at 274).

■ Accordingly, we hold that because the state action statute shifts the source of the prevailing party's attorneys' fees to the losing party, an award of fees based on a percentage of the prevailing party's recovery is improper. Therefore, the circuit judge erred in calculating attorneys' fees in this manner.

### B. "Reasonable" attorneys' fees under the state action statute

#### 1. *Reasonableness of the circuit judge's award*

■ Our analysis does not end with a determination of the proper method for calculating attorneys' fees, however. Regardless of any theoretical preference for one method of fee calculation over another, the overriding benchmark for awards of attorneys' fees under both the state action statute and the general premise of the common fund doctrine is that attorneys' fees must be "reasonable." *See Del. Valley Citizens' Council*, 478 U.S. at 562, 106 S.Ct. 3088. In light of the circumstances of this case, we hold that an award of $8.66 million in attorneys' fees is entirely unreasonable.

From its inception in our original jurisdiction, this Court repeatedly took actions which served to narrow the focus of this litigation and minimize the associated costs to all involved. In the order granting original jurisdiction, the Court required that all contributions made by old TERI participants pursuant to Act 153 must be deposited by the Retirement System into an interest-bearing escrow account until the Court rendered a final decision. This prophylactic decree, made on the Court's own motion, acted to preserve the funds at issue with no further legal action necessary by either party.

The Court's order expanded the scope of this mandate for efficiency to the sequencing and substance of the case. With no further discovery permitted, the Court instructed the parties to agree on the matters to be included in the appendix within ten days of the order granting original jurisdiction and set forth specific guidelines as to the exact materials to be submitted to the Court by each party thereafter.[7] The Court limited these materials to the parties' final briefs and the appendix, and specified that the parties would be notified "if the Court finds that oral argument is necessary to resolve the issues in this matter." The Court also provided a specific timeline for submission of materials along with the admonition that "[n]o continuances or extensions will be granted absent extraordinary circumstances." Pursuant to this timeline, the entire process of collecting and submitting the necessary documents was to be completed within a maximum of eighty days from the Court's order. Finally, noting the named TERI participants' motion for class certification in the trial court, this Court ordered that the motion be re-filed in the Court within five days of the order.

Even after the final judgment in *Layman*, this Court's actions were aimed at serving the parties' fiscal interests. When the State and the Retirement System informed the Court that their records contained all of the information necessary to effectuate the return of contributions—already held in escrow pursuant to the earlier Court order—to all of the TERI participants subject to the Court's ruling, the Court decertified the class of TERI plaintiffs. Because the relief granted to the named plaintiffs applied to each and every TERI participant in the defined class, the Court determined that the Retirement System's assurances that it would fully comply with the Court's order for relief made the time-consuming and costly formality of class notice unnecessary. Moreover, the Court rejected counsel's request for attorneys' fees to be paid out of the common fund so that the TERI participants would not ultimately bear the costs of litigation

7. The Court also specified that if the parties could not agree, all matters designated by both parties would be included in the appendix without prejudice to the right of the TERI plaintiffs to move for costs pursuant to Rule 222(c), SCACR, for printing irrelevant matter.

associated with enforcing their contract rights with the government.

Counsel for the TERI plaintiffs claim that their efficient and expeditious efforts fully justify an $8.66 million award of attorneys' fees. Counsel claims that their good lawyering not only resulted in 100% recovery for the TERI participants, but ultimately saved tens of thousands of dollars in attorneys' fees due to the quick result obtained in the case. Although counsel's efforts were certainly commendable, counsel is not entitled to sole credit for the overall efficiency of the case when it was also counsel's compliance with this Court's instructions that yielded this judicious result.

Viewing the circuit judge's award of attorneys' fees in light of the state action statute's limitation that attorneys' fees assessed to a state agency may only be paid "upon presentation of an itemized accounting of the attorney's fees," S.C.Code Ann. § 15–77–330, the circuit judge's $8.66 million award results in an hourly rate of $6,000 for each attorney and staff member involved in the litigation of the case on behalf of the TERI participants. We find this fee inconsistent with this Court's careful crafting of both the procedural and substantive path of this case aimed at minimizing costs for all involved. Accordingly, we hold that under the circumstances of this case, the circuit judge's award of $8.66 million in attorneys' fees pursuant to the state action statute was unreasonable.

### 2. Calculation of reasonable attorneys' fees

 We turn next to the method of calculating attorneys' fees in this case, and hold that a lodestar analysis is the proper method for determining an award of "reasonable" attorneys' fees under the state action statute. A lodestar figure is designed to reflect the reasonable time and effort involved in litigating a case, and is calculated by multiplying a reasonable hourly rate by the reasonable time expended. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 652 (4th Cir.2002). Using this as a starting point for reasonableness, a court may consider other factors justifying an enhancement of the lodestar figure with a "multiplier" before arriving at a final amount. *See Edmonds*, 658 F.Supp. at 1148. In our opinion, the lodestar method is particularly appropriate in this

case because it equally embraces the theory of fee-shifting embodied in the state action statute, as well as the notion of efficiency established by the Court in the underlying litigation. Accordingly, we proceed with a lodestar analysis in order to determine reasonable attorneys' fees in this case. *See also Del. Valley Citizens' Council*, 478 U.S. at 565, 106 S.Ct. 3088 (noting the strong presumption that the lodestar approach is the most accurate determination of reasonable attorneys' fees in light of the intended purpose of the usual fee-shifting statute); *Burke*, 206 Ariz. 269, 77 P.3d 444 (finding the lodestar calculation to be the appropriate method of awarding reasonable attorneys' fees where a settlement agreement established a fee-shifting as opposed to a fee-spreading scenario).

In determining the reasonable time expended and a reasonable hourly rate for purposes of calculating attorneys' fees, South Carolina courts have historically relied on six common law factors of reasonableness: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services. *See Jackson*, 326 S.C. at 308, 486 S.E.2d at 760. In order to address the exceptional circumstances of this case, this Court instructed the circuit judge in the *Layman* remand order to give enhanced consideration to three of these factors in determining an award of reasonable attorneys' fees: specifically, "the actual amount of work performed, expenses incurred, and the benefit obtained for all of the old TERI participants." *Layman v. State*, S.C. Sup.Ct. Order dated June 1, 2006 (368 S.C. at 648, 630 S.E.2d at 274). In emphasizing these criteria, this Court intended to remain consistent with the theoretical guidelines for awarding fees pursuant to a fee-shifting statute, while addressing the equitable implications in awarding statutory attorneys' fees to counsel who, over a relatively brief period of time, successfully litigated a claim that yielded 100% recovery for the entire class of TERI plaintiffs. We reiterate that it was error for the circuit judge to read so far into these equity-based specifications to the point of awarding attorneys' fees based on a method commonly associated with an equitable theory (i.e., fee-spreading) that was not in play in this case.

### a. Lodestar calculation of attorneys' fees

 Beginning with an analysis based on the common law factors of reasonableness, we proceed with a lodestar calculation of reasonable attorneys' fees using the hourly rate quotes and time sheets submitted by counsel for TERI plaintiffs. Because neither party disputes that the hourly rates submitted by counsel for the TERI plaintiffs are reasonable given the professional standing of counsel and the nature of the case, the chart below reflects this Court's determination that counsel for TERI plaintiffs' current rates constitute a reasonable hourly rate for purposes of a lodestar calculation. *See Liberty Mut. Ins. Co. v. Emp. Res. Mgmt., Inc.*, 176 F.Supp.2d 510 (D.S.C.2001) (explaining that a reasonable hourly rate is determined by comparing the rates of the prevailing party's attorneys to the prevailing market rates in the community for similar services by lawyers of comparable standing). In order to reflect his role as lead counsel in class action litigation, the lodestar analysis uses Mr. Lewis's premium hourly rate which he typically reserves for "difficult" cases.

 Turning next to the reasonable time spent on the litigation, we first consider that the time sheets submitted by counsel for TERI plaintiffs include all of the hours spent on the litigation of the case (designated in the chart below as "Total Hours Expended"), with no distinction between time associated with the TERI participants' claims giving rise to the instant case, and time associated with the Working Retirees' claims, which were remanded. Although the record indicates that Working Retirees constituted roughly one-third of the class of plaintiffs in *Layman*, we do not find it necessary to adjust the total hours expended by this proportion in order to arrive at a reasonable fee in this case. Not only were the same legal theories advanced on behalf of both the TERI participants and the Working Retirees, making their claims virtually indistinguishable, but more importantly, guiding jurisprudence explicitly holds that "a party need not be successful as to all issues in order to be found to be a prevailing party" for purposes of awarding attorneys' fees under the state action statute.[8] *Heath*, 302 S.C. at 182, 394 S.E.2d at

---

**8.** In fact, we cannot characterize the Working Retirees' claims as unsuccessful at this point, as these claims have simply been remanded for further consideration.

711. Only in an abundance of caution, however, do we reduce the number of total hours expended by three percent (3%), rounded down to the nearest tenth, in order to account for any time devoted solely to the Working Retirees' claims, thereby arriving at what we view as a "reasonable" number of hours expended on the TERI participants' claims (appearing as "Net Hours Expended" in the chart below). *See Edmonds*, 658 F.Supp. at 1135 n. 18, 1147 n. 44 (performing a lodestar analysis and adjusting the time devoted to litigating the underlying case by two to three percent in order to account for the fact that "some hours may not be properly compensable").

Based on the foregoing, the Court calculates the lodestar fee in this case as follows:

| | Total Hours Expended | Net Hours Expended | Hourly Rate | Totals |
|---|---|---|---|---|
| Lewis & Babcock | | | | |
| A. Camden Lewis | 139.5 | 135.3 | $600.00 | $81,180.00 |
| Keither M. Babcock | 224.8 | 218.0 | $350.00 | $76,300.00 |
| Ariail E. King | 109.7 | 106.4 | $225.00 | $23,940.00 |
| Peter D. Protopapas | 14.6 | 14.1 | $250.00 | $ 3,525.00 |
| William A. McKinnon | 262.1 | 254.2 | $225.00 | $57,195.00 |
| Brady R. Thomas | 25.2 | 24.4 | $200.00 | $ 4,880.00 |
| Paralegals | 271.3 | 263.1 | $ 80.00 | $21,048.00 |
| Law Clerks | 144.2 | 139.8 | $ 70.00 | $ 9,786.00 |
| Richard A. Harpootlian, P.A. | | | | |
| Richard A. Harpootlian | 97.5 | 94.5 | $500.00 | $ 47,250.00 |
| David Scott | 96.8 | 93.8 | $250.00 | $ 23,450.00 |
| Heather Herron | 44.6 | 43.2 | $ 80.00 | $ 3,456.00 |
| Holli Langenburg | 5.1 | 4.9 | $ 80.00 | $ 392.00 |

**TOTAL** $352,402.00

b. Enhancement of the lodestar fee with a multiplier

▇▇ Using the lodestar calculation of $352,402.00 as a starting point for a reasonable fee in this case, we further conclude that enhancing the lodestar figure through a multiplier is necessary to reflect the exceptional circumstances of this case as emphasized by the Court in the remand order. *See Blum*, 465 U.S. at 897, 104 S.Ct. 1541 (recognizing that an enhanced lodestar award may be justified "in some cases of exceptional success" (quoting *Hensley v. Eckerhart*, 461 U.S.

424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))). More specifically, we find that the expedited litigation timeline imposed by the Court, the wholly successful recovery for the entire class of TERI participants, the extraordinary sum of money returned to the TERI participants and ultimately saved by the TERI participants, and the termination of governmental acts constituting a breach of contract are exceptional circumstances which justify the use of a multiplier. Accordingly, we apply a multiplier of 1.25 to the lodestar calculation in order to arrive at a reasonable fee that adequately compensates counsel for the TERI plaintiffs.[9] To this total, we add the expenses incurred by counsel for the TERI plaintiffs, which this Court directed the circuit judge to include in the award of attorneys' fees, even though the state action statute does not mandate such reimbursement.[10] *See also Hyatt v. Apfel,* 195 F.3d 188, 192 (4th Cir.1999) (affirming a multiplier of 1.333 applied to a lodestar calculation of attorneys' fees to be paid by the defendant government entity on account of the "exceptional results" obtained by plaintiffs' counsel); *Edmonds,* 658 F.Supp. at 1148 (applying a multiplier of 1.15 to 1.25 to the lodestar fees for the plaintiffs' various attorneys to account for the "exceptional circumstances" surrounding the amount of money involved and the results obtained in the case).

---

9. The award of reasonable attorneys' fees under the state action statute is in the Court's discretion and there are numerous ways for the Court to arrive at this reasonable fee when applying a multiplier. In choosing the multiplier to be applied in the instant case, we find the following observation instructive.

> Unless the court knows beforehand precisely what this reasonable value should be, the selection of an appropriate multiplier must follow essentially a trial and error course. If the use of one multiplier over another results in what the court feels is an unreasonably high or low fee, then the multiplier must be adjusted to comport with the court's perception of the proper fee award under the circumstances.

*In re Chicken Antitrust Litigation,* 560 F.Supp. 963, 995 (N.D.Ga.1980); *see also Edmonds,* 658 F.Supp. at 1149.

10. Any attempt to characterize the expenses incurred as being related to the TERI participants' claims or the Working Retirees' claims would, in our opinion, be an exercise in futility. Because of the unified nature of these claims, and because the expenses incurred are relatively insignificant, we include them in their entirety in the calculation of reasonable attorneys' fees.

Adjusting the lodestar calculation to reflect the exceptional circumstances of this case emphasized by this Court in the remand order, we calculate a reasonable attorneys' fee as follows:

| | |
|---|---|
| Lodestar base calculation | $352,402.00 |
| Multiplier | × 1.25 |
| Subtotal | $440,502.50 |
| Add expenses incurred | + 4,724.10 |
| **TOTAL ENHANCED LODESTAR** | $445,226.60 |

Accordingly, we hold that an enhanced lodestar figure equaling $445,226.60 constitutes a reasonable award of attorneys' fees to counsel for TERI plaintiffs under the state action statute.

## C. Summary of attorneys' fee calculation

The following summarizes our resolution of this appeal arising from the Court's remand of *Layman* to the circuit judge for a determination of reasonable attorneys' fees. We hold that the circuit judge's award of attorneys' fees using the percentage-of-the-recovery method was improper and resulted in an award that was unreasonable under the state action statute. We therefore vacate the award of $8.66 million to counsel for TERI plaintiffs and further hold that a reasonable award of attorneys' fees in this case is properly calculated using the lodestar method, enhanced by a multiplier and the addition of counsel's expenses to reflect "the actual amount of work performed, expenses incurred, and the benefit obtained for all of the old TERI participants." Based on a calculation representative of this conclusion, we assess reasonable attorneys' fees in the amount of $445,226.60 against the State and the Retirement System.

### CONCLUSION

For the foregoing reasons, we affirm the circuit judge's award of attorneys' fees under the state action statute, but modify the court's award of fees using a lodestar calculation and an appropriate multiplier.

MOORE, BEATTY, JJ., and Acting Justices E.C. BURNETT, III and THOMAS W. COOPER, JR., concur.

## ORDER

On January 28, 2008, this Court issued an opinion affirming the circuit judge's award of statutory attorneys' fees for counsel who successfully litigated the claims of a class of TERI participants (Respondents/Appellants in the instant action) against the State and the South Carolina Retirement System.[1] *Layman v. The State of South Carolina and The South Carolina Retirement System,* Op. No. 26427 (S.C. Sup. Ct. filed January 28, 2008) (376 S.C. 434, 658 S.E.2d 320, 2008 WL 220367) [hereinafter *Layman II*]. Beginning with a lodestar calculation based on the timesheets in the record before this Court and on counsel's hourly rates, this Court enhanced the lodestar figure with a multiplier to reflect the exceptional circumstances of the case, and modified the circuit judge's calculation of attorneys' fees to award counsel for the TERI plaintiffs $445,226.60. *Id.* at 461, 658 S.E.2d at 335, 2008 WL 220367.

Counsel for the TERI plaintiffs filed a petition for rehearing, and in their return, the State and the Retirement System moved for leave to supplement the record. We deny the motions of both parties and issue this order modifying the award of attorneys' fees to reflect the additional fees and costs incurred by counsel for the TERI plaintiffs in litigating the issue of attorneys' fees. In doing so, we note that counsel for the TERI plaintiffs did not set forth these additional fees and costs in the record before this Court in *Layman II* even though counsel were presumably aware that the State's and the Retirement System's theory of the case was that under the relevant statute, attorneys' fees were to be awarded based solely on counsel's hourly rate and time expended. While the matter could be remanded at this juncture for a calculation of attorneys' fees in accordance with the methodology outlined in *Layman II*, in the interest of fairness and in ending this litigation without further accrual of fees by either side, we modify our original award of attorneys' fees to include this additional time expended by counsel.

The revised award of attorneys' fees is itemized as follows:

---

1. This Court's opinion in the underlying litigation is found in *Layman v. The State of South Carolina and The South Carolina Retirement System,* 368 S.C. 631, 630 S.E.2d 265 (2006) [hereinafter *Layman I*].

| | Total Hours Expended | Net Hours Expended | Hourly Rate | Totals |
|---|---|---|---|---|
| **Court's original lodestar calculation (hours expended before June 1, 2006)** | | | | |
| Lewis & Babcock | | | | |
| A. Camden Lewis | 139.5 | 135.3 | $600.00 | $81,180.00 |
| Keith M. Babcock | 224.8 | 218.0 | $350.00 | $76,300.00 |
| Ariail E. King | 109.7 | 106.4 | $225.00 | $23,940.00 |
| Peter D. Protopapas | 14.6 | 14.1 | $250.00 | $ 3,525.00 |
| William A. McKinnon | 262.1 | 254.2 | $225.00 | $57,195.00 |
| Brady R. Thomas | 25.2 | 24.4 | $200.00 | $ 4,880.00 |
| Paralegals | 271.3 | 263.1 | $ 80.00 | $21,048.00 |
| Law Clerks | 144.2 | 139.8 | $ 70.00 | $ 9,786.00 |
| | | | | |
| R.A. Harpootlian, P.A. | | | | |
| Richard A. Harpootlian | 97.5 | 94.5 | $500.00 | $47,250.00 |
| David Scott | 96.8 | 93.8 | $250.00 | $23,450.00 |
| Heather Herron | 41.6 | 43.2 | $ 80.00 | $ 3,456.00 |
| Holli Langenburg | 5.1 | 4.9 | $ 80.00 | $ 392.00 |
| | | | Subtotal | $352,402.00 |
| | | | | |
| **Additional hours expended (after June 1, 2006)[2]** | | | | |
| Lewis & Babcock | | | | |
| A. Camden Lewis | 267.8 | N/A [3] | $600.00 | $160,680.00 |
| Keith M. Babcock | 211.3 | N/A | $350.00 | $ 73,955.00 |
| Mary G. Lewis | 4.4 | N/A | $350.00 | $ 1,540.00 |
| Ariail E. King | 522.7 | N/A | $225.00 | $117,607.50 |
| Peter D. Protopapas | .80 | N/A | $250.00 | $ 200.00 |
| William A. McKinnon | 3.4 | N/A | $225.00 | $ 765.00 |
| Brady R. Thomas | 5.5 | N/A | $200.00 | $ 1,100.00 |
| Paralegals | 288.3 | N/A | $ 80.00 | $ 23,064.00 |
| Law Clerks | 120.3 | N/A | $ 70.00 | $ 8,421.00 |
| | | | | |
| R.A. Harpootlian, P.A. | | | | |
| Richard A. Harpootlian | 143.4 | N/A | $500.00 | $ 71,700.00 |
| Graham Newman | 29.8 | N/A | $250.00 | $ 7,450.00 |
| Heather Herron | 55.0 | N/A | $ 80.00 | $ 4,400.00 |
| Holli Langenburg | 2.7 | N/A | $ 80.00 | $ 216.00 |
| | | | Subtotal | $471,098.50 |
| | | | **TOTAL LODESTAR** | $823,500.50 |

| Lodestar enhancement | |
|---|---|
| Lodestar base calculation | $823,500.50 |
| Multiplier | × 1.25 |
| Subtotal | $1,029,375.63 |

| | |
|---|---|
| Add expenses incurred | + $4,724.10 |
| Add additional expenses incurred after June 1, 2006 | + $41,602.01 |
| **TOTAL ENHANCED LODESTAR** | **$1,075,701.74** |

2. Itemized post-June 1 costs and fees incurred by counsel for TERI plaintiffs were set forth in affidavits included in the petition for rehearing.

3. As described in *Layman II*, attorneys' fees in this matter are not being awarded for the litigation of the Working Retirees' claims in *Layman I*.

Accordingly, we modify our previous award of attorneys' fees in Layman II, and assess reasonable attorneys' fees in the amount of $1,075,701.74 against the State and the Retirement System.

IT IS SO ORDERED.

s/ Jean H. Toal, C.J.

s/ James E. Moore, J.

s/ Donald W. Beatty, J.

---

Accordingly, in calculating a reasonable fee, this Court reduced the number of total hours submitted for each attorney and staff member by 3% (shown as "Net Hours Expended") to account for time devoted solely to the claims of the Working Retirees in the underlying litigation. See Layman II at 434, 658 S.E.2d at 333. Because the additional time expended by counsel after June 1, 2006 logically reflects only those hours spent on the litigation of attorneys' fees with respect to the TERI plaintiffs, there is no need for a similar reduction in our calculation today.

s/ E.C. Burnett, III, A.J.

s/ Thomas W. Cooper, Jr., A.J.